EXHIBIT 1

No. 22-6074

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION,
PLAINTIFF - APPELLANT,

v.

GLEN MULREADY,
IN HIS OFFICIAL CAPACITY AS INSURANCE COMMISSIONER OF OKLAHOMA, ET AL.,
DEFENDANTS - APPELLEES.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
CASE NO. 5:19-CV-00977-J
HON. BERNARD M. JONES

---

**BRIEF OF *AMICI CURIAE***
**THE STATE CHAMBER RESEARCH FOUNDATION LEGAL CENTER, INC.**
**AND THE OKLAHOMA EMPLOYERS HEALTHCARE ALLIANCE, INC.**

---

SUBMITTED IN SUPPORT OF PLAINTIFF-APPELLANT
AND IN SUPPORT OF REVERSAL ON ERISA PREEMPTION

---

MARK D. SPENCER
BRANDON LONG
MCAFEE & TAFT A PROFESSIONAL CORPORATION
EIGHTH FLOOR, TWO LEADERSHIP SQUARE
211 NORTH ROBINSON
OKLAHOMA CITY, OK 73102-7103
TELEPHONE:    (405) 235-9621
FACSIMILE:    (405) 235-0439
MARK.SPENCER@MCAFEETAFT.COM
BRANDON.LONG@MCAFEETAFT.COM

ATTORNEYS FOR THE STATE CHAMBER RESEARCH FOUNDATION LEGAL CENTER, INC.
AND THE OKLAHOMA EMPLOYERS HEALTHCARE ALLIANCE, INC.

APRIL 10, 2023

## CORPORATE DISCLOSURE STATEMENT

1.      The State Chamber Research Foundation Legal Center, Inc. ("SCRFLC") has no parent corporations and no publicly-held corporation that own 10% or more of its stock.

2.      The Oklahoma Employers Healthcare Alliance, Inc. ("OEHA") has no parent corporations and no publicly-held corporation that own 10% or more of its stock.

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

CORPORATE DISCLOSURE STATEMENT ........................................................ i

STATEMENT OF THE IDENTITY OF *AMICI* CURIAE,  THEIR INTEREST IN THE CASE AND THE SOURCE OF THEIR AUTHORITY TO FILE .............1

STATEMENT REGARDING AUTHORSHIP AND FUNDING ...........................4

SUMMARY OF THE ARGUMENT ....................................................................4

ARGUMENT ......................................................................................................5

I.   ERISA  PLAN  FIDUCIARIES  WILL  SUFFER  SEVERE CONSEQUENCES IF THEY COMPLY WITH PREEMPTED PBM LAWS. ...........................................................................................5

     ERISA's Goals ...........................................................................5

     ERISA Plan Mechanics .............................................................6

     ERISA's Fiduciary Standards ....................................................6

     ERISA Claim Mechanics ...........................................................7

     Fiduciary Liabilities and Penalties ..........................................9

II.   STATES  CANNOT  REGULATE  ERISA  PLANS  THROUGH COERCIVE  LAWS  DIRECTED  AT  THEM  OR  AT  THIRD PARTIES. ...................................................................................10

III.   THE  PBM  LAWS  CONTAIN  PROVISIONS  THAT  ARE PREEMPTED. .............................................................................14

     Anti-Incentivization.................................................................17

     Member ID Cards....................................................................19

     Licensing ................................................................................20

     Investigations/Fines/Penalties ...............................................22

     Multi-State Plans ....................................................................23

CONCLUSION ................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*D.C. v. Greater Wash. Bd. of Trade*,
   506 U.S. 125 (1992)...................................................................10, 12

*Egelhoff v. Egelhoff*,
   532 U.S. 141 (2001)..................................................................12, 23

*FMC Corp. v. Holliday*,
   498 U.S. 52 (1990).........................................................................8

*Gobeille v. Liberty Mut. Ins. Co.*,
   577 U.S. 312 (2016).................................................8, 13, 15, 21, 23

*Ingersoll-Rand Co. v. McClendon*,
   498 U. S. 133 (1990)...........................................................6, 10, 23

*Jones v. The Kodak Med. Assistance Plan*,
   169 F.3d 1287 (1999)....................................................................12

*Kelley v. Sears, Roebuck & Co.*,
   882 F.2d 453 (10th Cir. 1989) ......................................................14

*Ky. Ass'n of Health Plans v. Miller*,
   538 U.S. 329 (2003)......................................................................21

*Lyn M. v. Premera Blue Cross*,
   966 F.3d 1061 (10th Cir. 2020), *reh'g denied*, 992 F.3d 1051 (10th
   Cir. 2021) ....................................................................................12

*Metro. Life Ins. Co.* v. *Mass.*,
   471 U.S. 724 (1985)......................................................................10

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins.
Co.*,
   514 U.S. 645 (1995).................................................................11, 14

*R.T.C. v. Fin. Inst's. Ret. Fund*,
   71 F.3d 1553 (10th Cir. 1995) ........................................................6

*Rush Prudential HMO, Inc. v. Moran*,
   536 U.S. 355 (2002)..................................................................................11

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
   141 S.Ct. 474 (2020)....................................... 2, 3, 13, 14, 15, 19, 24

*UNUM Life Ins. Co. of Am. v. Ward*,
   526 U.S. 358 (1999)..................................................................................10

**Statutes**

36 Okla. Stat. § 6060.2(A)(7) ..................................................................15

36 Okla. Stat. §§ 6958-6968 .....................................................................2

36 Okla. Stat. § 6960(3) ...........................................................................20

36 Okla. Stat. § 6961(D) .....................................................................19, 20

36 Okla. Stat. § 6962(B)(4) ......................................................................19

36 Okla. Stat. § 6963(E) ...........................................................................17

36 Okla. Stat. § 6966(C) ...........................................................................22

59 Okla. Stat. §§ 356-360 ..........................................................................2

59 Okla. Stat. § 356.1(A) ..........................................................................20

59 Okla. Stat. § 357(6) ..............................................................................20

59 Okla. Stat. § 358(A) ..............................................................................20

59 Okla. Stat. § 358(D) ..............................................................................23

29 U.S.C. §§ 1001-1461 .............................................................................2

29 U.S.C. § 1001(a) ....................................................................................5

29 U.S.C. § 1001(b) ....................................................................................5

29 U.S.C. § 1002(16)(a).............................................................................6

29 U.S.C. § 1002(16)(b).............................................................................6

29 U.S.C. § 1002(21)(A).............................................................................6

29 U.S.C. § 1002(21)(A)(i) .................................................................................8

29 U.S.C. § 1002(21)(A)(i), (iii) ........................................................................8

29 U.S.C. § 1002(32) ........................................................................................16

29 U.S.C. § 1002(33) ........................................................................................16

29 U.S.C. §§ 1021-1025, 1166(a)(4) ..................................................................6

29 U.S.C. §§ 1102(a), (b) ...................................................................................6

29 U.S.C. § 1102(c) ............................................................................................7

29 U.S.C. §§ 1103(a), (c)(1) ...............................................................................6

29 U.S.C. § 1104(a) ............................................................................................7

29 U.S.C. § 1104(a)(1)(D) ..................................................................................8

29 U.S.C. § 1104(c)(1) ......................................................................................13

29 U.S.C. § 1109(a) ............................................................................................9

29 U.S.C. § 1110 ................................................................................................6

29 U.S.C. § 1131 ..............................................................................................10

29 U.S.C. §§ 1131, 1132 ..................................................................................22

29 U.S.C. § 1132(a)(1)(B) ..................................................................................9

29 U.S.C. §§ 1132(a)(2), (4), (5), (6), (8) ........................................................22

29 U.S.C. § 1132(a)(2), (e)(1) ............................................................................9

29 U.S.C. § 1132(a)(3), (e)(1) ............................................................................9

29 U.S.C. § 1132(d)(1) .......................................................................................6

29 U.S.C. § 1132(g)(1) .......................................................................................9

29 U.S.C. § 1132(*l*) ..........................................................................................9

29 U.S.C. § 1133 ................................................................................................7

29 U.S.C. § 1133(1) ................................................................8

29 U.S.C. § 1133(2) ...............................................................7, 8

29 U.S.C. § 1134 ..................................................................10

29 U.S.C. § 1144(a) .................................................10, 13, 15, 16, 21

29 U.S.C. § 1144(a)(a), (c) .......................................................22

29 U.S.C. § 1144(b)(1), (2) .......................................................17

29 U.S.C. § 1144(b)(2)(A) ......................................................10, 21

29 U.S.C. § 1144(b)(2)(B) .........................................................21

29 U.S.C. § 1144(c) ...............................................................10

29 U.S.C. § 1144(c)(1) ..........................................................15, 16

Ark. Code § 17-92-501 .............................................................23

Ga. Code Ann. §§ 33-64-1(4), (10), (11), 33-64-9(h) ...............................23

Minn. Stat. Ann. §§ 60W.02 ........................................................23

Mo. Rev. Stat. §§ 376.1350 (18), (22)-(24), 376.396(3), 387(7) ....................23

N.D. Cent. Code Ann. § 26.1-36-12.2(5) ............................................23

Vt. Stat. Ann. tit. 18, §§ 9471(4), 9474(c)-(e) ...................................23

**Other Authorities**

29 C.F.R. § 2560.503-1 .............................................................7

29 C.F.R. § 2560.503-1(b)(5) .......................................................7

Duncan Banner, *Commissioner Mulready Sets Record Straight about Changes to Prescription Program,* Feb. 28, 2023 .............................17

https://www.oid.ok.gov/release_040323/ ............................................24

N.Y. Dep't of Fin. Serv's, *Insulin Cost-Sharing Limit Q&A Guidance,* https://www.dfs.ny.gov/apps_and_licensing/health_insurers/insulin_cost_sharing_qa_guidance ...............................................15

**Statement of related cases.**    There are no prior or related appeals to *Amicis'* knowledge.

## STATEMENT OF THE IDENTITY OF *AMICI* CURIAE, THEIR INTEREST IN THE CASE AND THE SOURCE OF THEIR AUTHORITY TO FILE

### *The State Chamber Research Foundation Legal Center, Inc.*

The purpose of the SCRFLC is to promote free enterprise and economic prosperity by advocating for the consistent and fair application of the law. Through high-quality research and analysis, SCRFLC educates policymakers and the public about the virtues of the free enterprise system, the public-policy ideas that enable free enterprise to thrive, and the positive contributions of the business community to the prosperity and welfare of the people of Oklahoma. As a non-profit, non-partisan research and education organization, SCRFLC is dedicated to advancing free markets, increasing opportunity, and growing prosperity.

### *The Oklahoma Employers Healthcare Alliance, Inc.*

The OEHA is a non-profit organization. https://oeha.org/page-18052. Its "mission is to act in the collective best interest of purchasers and members while being transparent and disruptive in our efforts to improve health in Oklahoma." *Id.* "Bringing together leaders and decision makers from a variety of businesses, the [OEHA] is a state-wide, employer-sponsored healthcare coalition. OEHA is committed to educating and empowering local employers and their employees to make informed healthcare-related decisions, and committed to promoting healthcare quality, cost-effectiveness, transparency and accountability in our community. …

OEHA offer[s] educational programs, sponsorship opportunities, research projects, and employer surveys that focus on increasing the value of health and welfare benefits for Oklahoma employers while also increasing the productivity of their workforce. OEHA … represent[s] the purchaser perspective on healthcare benefits and healthcare delivery." https://oeha.org/page-18052.

### *Amicis' Interest in the Case*

SCRFLC speaks for, and OEHA has, employer-members who sponsor group health plans, including self-funded plans and multi-state plans, that are regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA").  Many of these benefit plans utilize Pharmacy Benefit Managers ("PBMs") to deliver significant cost savings not only to the plans themselves, but to the employee-members and their dependents.

Oklahoma has enacted various laws to regulate PBMs including the Oklahoma Patient's Right to Pharmacy Choice Act, 36 Okla. Stat. §§ 6958-6968, and the Oklahoma Pharmacy Audit Integrity Act, 59 Okla. Stat. §§ 356-360 (Collectively the "PBM laws"). [1] The PBM Laws purport to capture, subjugate, and

---

[1]  While the Oklahoma Patient's Right to Pharmacy Choice Act is at issue here, *Amici* have included a discussion in this brief of other related PBM Laws and their interpretations that have been advanced in the wake of *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S.Ct. 474 (2020), to illustrate the importance of the issues in this case. Since *Rutledge*, Oklahoma has launched a full-on effort to regulate ERISA self-funded plans.

regulate ERISA plans and their plan administrators. Many of these laws are nothing more than trojan horse laws disguised as "PBM" laws, which are really efforts to directly regulate ERISA self-funded plans and cost shift to employers and employees.

The PBM Laws purport to capture third-party PBMs who contract with ERISA plans. Various PBM Laws have a coercive effect by presenting ERISA fiduciaries with the Hobson's choice of either violating ERISA and their plan documents or rewriting their plans to comply with state law. Thus, some of those laws are preempted as applied to the plans and their fiduciaries. In this regard Oklahoma's PBM Laws sweep far beyond the regulation of the behind-the-scenes drug reimbursement methodologies at issue in *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S.Ct. 474 (2020).

The district court did not have the perspective of the plans themselves or those who administer them. *Amici* offer that important perspective here.

### Source of Authority to File

Ben Lepak is the Executive Director of SCRFLC and has authorized the filing of this brief for that entity.

The OEHA's Board of Directors has authorized the filing of this brief for that entity.

## STATEMENT REGARDING AUTHORSHIP AND FUNDING

*Amici* and their counsel state that:

(i)    no party's counsel authored this brief in whole or in part;

(ii)   no party or a party's counsel contributed money that was intended to fund preparing or submitting this brief; and

(iii)  no person – other than the *amici curiae*, their members, or their counsel – contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF THE ARGUMENT

State laws can be preempted on their face, or they can be preempted as applied in certain situations or to certain persons or entities.  For example, a neutral state law can be preempted if a state official attempts to enforce it against an ERISA plan.  But that same state law could be enforced against governmental plans or church plans because ERISA does not apply to them.  The district court largely employed a facial preemption analysis and concluded the PBM laws "are not" preempted, but it did not consider whether they are preempted as applied, especially as to the *amicus* entities.

These PBM Laws are preempted as applied to ERISA plans, their members, and those who administer them.  Moreover, state officials could try to apply parts of these PBM Laws to persons and entities in the future in ways that are not currently

envisioned in this action.  Consequently, *Amici* ask this Court to avoid sweeping proclamations that the PBM Laws, or parts of them, "are not" preempted in all contexts, or as to all persons or entities.

## ARGUMENT

**I.  ERISA PLAN FIDUCIARIES WILL SUFFER SEVERE CONSEQUENCES IF THEY COMPLY WITH PREEMPTED PBM LAWS.**

### *ERISA's Goals*

One of ERISA's stated goals is "that minimum standards be provided assuring the equitable character of such plans and their financial soundness."  29 U.S.C. § 1001(a).  It is a declared policy of ERISA "to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries … by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001(b).  The Supreme Court has held that Congress enacted ERISA "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government ... [and to prevent] the potential for conflict in substantive law ... requiring the tailoring of plans and employer

conduct to the peculiarities of the law of each jurisdiction." *Ingersoll-Rand Co. v. McClendon*, 498 U. S. 133, 142 (1990).

### *ERISA Plan Mechanics*

ERISA plans are distinct entities. 29 U.S.C. § 1132(d)(1). An ERISA plan is established and maintained by a "sponsor" (e.g., an employer and/or a union). 29 U.S.C. § 1002(16)(b). The plan's "administrator," 29 U.S.C. § 1002(16)(a), acts to oversee the plan for communication, reporting and other administration purposes. *See, e.g.,* 29 U.S.C. §§ 1021-1025, 1166(a)(4). The plan's "fiduciaries" are those who manage and administer the plan and its assets. 29 U.S.C. § 1002(21)(A). ERISA fiduciary status and liability cannot be disclaimed. 29 U.S.C. § 1110.

The plan must be established pursuant to a written instrument, which must identify things like funding sources and payment methods, and "the basis on which payments are made to and from the plan." 29 U.S.C. §§ 1102(a), (b). The assets of the plan are deemed to be held in trust, and they can only be used to pay benefits and to defray reasonable plan administration expenses. 29 U.S.C. §§ 1103(a), (c)(1); 1104(a)(1)(A). This is known as the "exclusive benefit rule." *R.T.C. v. Fin. Inst's. Ret. Fund*, 71 F.3d 1553, 1557 (10th Cir. 1995).

### *ERISA's Fiduciary Standards*

ERISA's fiduciary requirements follow the exclusive benefit rule. ERISA defines a fiduciary as follows:

a person <u>is</u> a fiduciary with respect to a plan to the extent (i) he exercises any <u>discretionary authority or discretionary control respecting management of such plan</u> or exercises <u>any</u> [discretionary <u>or non-discretionary</u>] authority or control respecting <u>management or disposition of its assets</u>, … or (iii) he has any <u>discretionary authority or discretionary responsibility in the administration of such plan</u>.

29 U.S.C. § 1104(a) (emphasis added).  ERISA requires that plan fiduciaries:

> shall discharge [their] duties with respect to a plan <u>solely in the interest of the participants and beneficiaries</u> and—
>
> A.    <u>for the exclusive purpose of:</u>
>
>> (i) <u>providing benefits to participants and their beneficiaries</u>; and
>>
>> (ii) <u>defraying reasonable expenses of administering the plan</u>; …
>
> and …
>
> D.    <u>in accordance with the documents and instruments governing the plan</u> insofar as such documents and instruments are consistent with the provisions of [ERISA].

29 U.S.C. § 1104(a) (emphasis added).  ERISA's command that plan fiduciaries must follow the plan documents looms large in this case.  *Id.; accord* 29 U.S.C. § 1102(c); 29 C.F.R. § 2560.503-1(b)(5).

### *ERISA Claim Mechanics*

ERISA mandates that benefit plans establish a two-step process for deciding claims for benefits.  29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1.  The first step is an initial claim decision, § 1133(1), followed by an opportunity for "full and fair review" of that decision if the claim is denied, § 1133(2).  The employer sponsors of self-funded plans often retain third-part administrators (a/k/a "TPAs," "claims

7

administrators," etc.) to process, pay, and/or deny initial claims for benefits under § 1133(1). *See, e.g., Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312 (2016) (the plan at issue used Blue Cross as its TPA).

Self-funded plans typically require § 1133(2) appeals to be taken to the employer-sponsor, or to an employee or a committee of its employees, since these plans are funded through employer and/or employee contributions rather than though insurance. *See, e.g., FMC Corp. v. Holliday*, 498 U.S. 52, 65 (1990) (noting the "distinction between benefit plans that are funded by the employer (self-insured plans) and those that are insured by regulated insurance companies (insured plans)"). The persons or entities who make the final claim decisions are ERISA "fiduciaries" because: 1) they have discretionary authority and control in the management and administration of the plan, 29 U.S.C. § 1002(21)(A)(i), (iii); 2) they exercise control over the plan's money (*e.g.,* whether the money should be retained or released to satisfy the claim), 29 U.S.C. § 1002(21)(A)(i); and 3) they are "named fiduciaries" under 29 U.S.C. § 1133(2). The plan fiduciaries are required by law to follow the mandates of ERISA and the terms of the Plan. 29 U.S.C. § 1104(a)(1)(D).

### *Fiduciary Liabilities and Penalties*

ERISA imposes severe penalties and liabilities on fiduciaries who violate their duties. If the fiduciaries fail to provide plan-mandated benefits then the plan members can file lawsuits under ERISA to recover them. 29 U.S.C. § 1132(a)(1)(B). The fiduciaries would be at risk to pay the members' attorney's fees and costs. 29 U.S.C. § 1132(g)(1).

On the other hand, if the documents and instruments governing the plan do not cover certain things, and if the fiduciaries pay for those non-covered things, the fiduciaries have breached their duty to follow the plan documents, and they have caused a loss to the plan. In that case ERISA renders the fiduciaries "<u>personally</u> <u>liable</u> to make good to [the] plan any losses to the plan resulting from each such breach, … and … subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary." 29 U.S.C. § 1109(a) (emphasis added). ERISA provides that the fiduciaries could be sued by the plan members, other fiduciaries, and/or the Secretary of Labor, in federal court for the aforementioned relief. 29 U.S.C. § 1132(a)(2), (e)(1). The fiduciaries could also be sued in federal court for violating ERISA and/or the terms of the plan. 29 U.S.C. § 1132(a)(3), (e)(1).

The fiduciaries can be fined by the Secretary of Labor for each fiduciary breach. 29 U.S.C. § 1132(*l*). Fiduciaries who willfully violate the provisions of

ERISA can be federally prosecuted and fined up to $100,000 and/or imprisoned up to 10 years. 29 U.S.C. § 1131. Benefit plans—especially noncompliant ones—can be audited by the United States Department of Labor. 29 U.S.C. § 1134.

## II. STATES CANNOT REGULATE ERISA PLANS THROUGH COERCIVE LAWS DIRECTED AT THEM OR AT THIRD PARTIES.

ERISA preempts all state laws that relate to an ERISA-regulated plan. 29 U.S.C. § 1144(a). Moreover, "the term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c). ERISA preempts state laws even if they are <u>consistent</u> with ERISA's federal standards. *See, e.g., D.C. v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 (1992) (holding that ERISA preempts state laws that are consistent with its provisions); *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990) (same).

The Supreme Court has held that states can in some circumstances regulate third-party <u>vendors</u> who provide goods or services to ERISA plans, and that in some circumstances the laws regulating such vendors are not preempted by ERISA. For example, states can regulate insurance companies, including companies that issue group insurance policies to fund ERISA-regulated plans. *See* 29 U.S.C. § 1144(b)(2)(A) (state laws which regulate insurance are saved from preemption); *Metro. Life Ins. Co.* v. *Mass.*, 471 U.S. 724 (1985) (holding that ERISA did not preempt certain mandated benefit laws that applied to insurers that issued policies to ERISA plans); *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358 (1999) (same

regarding a state common law doctrine).  The Court has also held that states can regulate health maintenance organizations (HMOs), that provide HMO benefits to benefit plans.  *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002).

In *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995), the Court addressed a state law that affected a different type of third-party: hospitals.  New York enacted a state statute which required hospitals— not benefit plans—to collect surcharges from patients covered by commercial insurers, but not from patients insured by Blue Cross/Blue Shield plans, and it also subjected certain HMOs to surcharges. 514 U.S. at 649.  A group of insurers, HMOs, hospitals, etc. brought an action and argued the statute was preempted because it forced the hospitals to charge more, and thus impacted ERISA plans.  But the statute regulated hospitals—not benefit plans.  The Court held that the state surcharges were not preempted because they "affect only indirectly the relative prices of insurance policies." *Id.* at 668.

However, the Court cautioned that "a state law might produce such acute, albeit indirect, economic effects, by intent or otherwise, <u>as to force an ERISA plan to adopt a certain scheme of substantive coverage</u> or effectively restrict its choice of insurers, <u>and … such a state law might indeed be pre-empted under [ERISA]</u>." *Id.* (emphasis added).

11

*Travelers* did not address various scenarios where the New York surcharge law would be preempted.  For example, if New York passed a statute that required <u>benefit plans</u> to <u>pay</u> surcharges to hospitals, such a law would undoubtedly be preempted.  *See, e.g., Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001) (holding that a state statute was preempted because it mandated payments from the plan in contravention of plan's terms).

Similarly, most group health plans only cover specific medical goods, services, and procedures.  *See, e.g., Lyn M. v. Premera Blue Cross*, 966 F.3d 1061, 1069 (10th Cir. 2020) (explaining the plan excluded "'benefits for services or supplies that are not medically necessary'"), *reh'g denied*, 992 F.3d 1051 (10th Cir. 2021); *Jones v. The Kodak Med. Assistance Plan*, 169 F.3d 1287, 1290 (1999) (same).  If a New York hospital submitted a bill to a self-funded <u>medical</u> plan for certain covered services, and tacked on a state-required non-medical surcharge, the plan's fiduciaries could only approve the covered medical charges but they could not approve the surcharge because such payment would cause a loss to the plan.  *See, e.g., Egelhoff*, 532 U.S. at 147 (holding that an ERISA plan could not be forced to make a payment under state law); *D.C. v. Greater Wash. Bd. of Trade*, 506 U. S. 125 (1992) (holding that ERISA preempted a D.C. law mandating that plans cover and pay for things that were not covered by the plans).

If the provider sued under state law to recover the excluded surcharges the lawsuit itself would be a form of "State Action," 29 U.S.C. § 1104(c)(1), that would be preempted, 29 U.S.C. § 1144(a). If state judges or administrative regulators tried to force the plan into paying the surcharge the result would be the same.

In *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312 (2016), a Vermont law required "health insurers, health care providers, health care facilities, and governmental agencies to report any 'information relating to health care costs, prices, quality, utilization, or resources required' by the state agency, including data relating to health insurance claims and enrollment." *Id.* at 316. The state law further defined a health insurer to include a "'self-insured ... health care benefit plan,' … as well as 'any third party administrator' …." *Id.* The Court held that "ERISA's express pre-emption clause requires invalidation of the Vermont reporting statute as applied to ERISA plans." *Id.* at 326 (emphasis added).

In *Rutledge v. Pharm. Care Mgmt. Ass'n*, 141 S.Ct. 474 (2020), when evaluating whether a relatively-narrow Arkansas PBM law was preempted by ERISA, the Court began with the principle that "[A] state law relates to an ERISA plan if it has a connection with or reference to such a plan." *Id.* (quoting *Egelhoff*, 532 U.S. at 147.

Regarding the impermissible "connection with" prong, the Court held:

Congress sought "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law," thereby "minimiz[ing] the

> administrative and financial burden of complying with conflicting
> directives" and ensuring that plans do not have to tailor substantive
> benefits to the particularities of multiple jurisdictions. …. ERISA is
> therefore primarily concerned with preempting laws that <u>require
> providers to structure benefit plans in particular ways</u>, such as by
> <u>requiring payment of specific benefits</u>, … or by <u>binding plan
> administrators to specific rules</u> for determining beneficiary status….
> A state law may also be subject to pre-emption if "<u>acute, albeit indirect,
> economic effects of the state law force an ERISA plan to adopt a
> certain scheme of substantive coverage</u>." …. As a shorthand for these
> considerations, this Court asks whether a state law "governs a <u>central
> matter of plan administration</u> or interferes with <u>nationally uniform plan
> administration</u>." …. If it does, it is pre-empted.

*Rutledge*, 141 S.Ct. at 480 (emphasis added). The Court held that a state law might

not be preempted if it "merely affects costs." *Id.* Elaborating, the Court explained

that the New York hospital surcharge in *Travelers* might have affected the "shopping

decisions" of plan sponsors, *i.e.,* in deciding which third-party vendors to hire. *Id.*

The Court held "In short, ERISA does not pre-empt state rate regulations that merely

increase costs or alter incentives for ERISA plans <u>without forcing plans to adopt any

particular scheme of substantive coverage</u>." *Id.* at 476 (emphasis added).

## III.   **THE PBM LAWS CONTAIN PROVISIONS THAT ARE PREEMPTED.**

It is one thing to say that a single specific state statute is or is not preempted

by ERISA. *See, e.g., Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453, 456 (10th Cir.

1989) (holding that ERISA preempted a Colorado unfair insurance practice statute).

It is a far different thing to say that ERISA does not preempt an <u>entire multi-part

state act.  Parts of the act might be preempted, and other parts might not.  Also, an act or a related state action might be preempted as applied to ERISA plans.

An example of a preempted state law as applied to ERISA plans is the Appellees' post-*Rutledge* position regarding a different statute containing an insulin cap, 36 Okla. Stat. § 6060.2(A)(7), which limits a plan members' copay to $30 for a 30-day supply of insulin. 36 Okla. Stat. § 6060.2(A)(7).[2]  Based on the *Rutledge/Travelers* statement that ERISA does not preempt state laws that merely affect costs, "It is … the position of the [Appellees] that the insulin cost-sharing caps created by 36 O.S. § 6060.2(A)(7) are applicable to any health plan . . . to the extent permitted by [ERISA]," including, but not limited to, **self-funded** ERISA plans." Okla. Ins. Dep't., LH Bulletin No. 2021-04 (Second Revision) (emphasis added); *cf. Gobeille*, 577 U.S. at 317 (holding that ERISA preempted a similar state law that purported to capture self-funded plans as by defining them as "health insurers").[3]

---

[2]  Efforts by a state to apply a state statute to an ERISA plan constitute a form of "State Law," 29 U.S.C. § 1144(c)(1), which is preempted by ERISA, 29 U.S.C. § 1144(a).

[3]  New York and Georgia appear to disagree with Oklahoma.  New York states: "Does the law limiting cost-sharing for prescription insulin apply to self-funded ERISA plans?  No.  The law does not apply to self-funded ERISA plans."  N.Y. Dep't of Fin. Serv's, *Insulin Cost-Sharing Limit Q&A Guidance,* https://www.dfs.ny.gov/apps_and_licensing/health_insurers/insulin_cost_sharing_qa_guidance.  Georgia states "Moreover, despite what some parties may claim, the recent *Rutledge v. PCMA* decision by the U.S. Supreme Court does not permit this office to regulate ERISA plans. Instead, the *Rutledge* decision merely found that an Arkansas law dealing with cost regulation was not pre-empted by ERISA under longstanding Supreme Court precedent. Accordingly, my office will continue to enforce those laws in Georgia which are not pre-empted by ERISA. However, this

But this is not a law directed at a third party that could merely affect the plan's "shopping decisions" when selecting a vendor based on its pricing.  It is a direct order from the state to self-funded ERISA plans to dip into their coffers and disgorge plan assets over $30 to cover a member's 30-day insulin supply.  The consequences are severe.  For example, if the written terms of an ERISA plan require the members to pay $100 for a 30-day supply of insulin, and a 30-day supply costs $130, the plan should only pay $30.  But if the fiduciaries follow state law, instead of the plan's terms, and pay $100, they have caused a $70 monthly loss, or an $840 annual loss for the plan.  If there are 500 plan members on insulin the annual loss is $420,000, and the fiduciaries, who have violated both ERISA and the terms of their plan, will suffer the torrent of federal (not state) penalties and liabilities described above.  Consequently, both the LH Bulletin No. 2021-04 itself, and any efforts by the Appellees to enforce it against self-funded ERISA plans, are forms of "State Law," 29 U.S.C. § 1144(c)(1), that are preempted by ERISA, 29 U.S.C. § 1144(a).

**But** the Appellees may be correct that the Oklahoma insulin cap applies to self-funded governmental plans, 29 U.S.C. § 1002(32), and church plans, 29 U.S.C.

---

also means my administration cannot and will not enforce Georgia's laws against ERISA plans until such time as it is permitted expressly by the U.S. Congress or a court of competent jurisdiction."  Letter from GA Comm'r of Ins. & Safety Fire (Mar. 7, 2022).

§ 1002(33), because those plans are exempt from ERISA, 29 U.S.C. § 1144(b)(1), (2). Again, ERISA preemption often turns on the context and parties involved.

The following are provisions of the PBM Laws that are preempted. There may be other provisions that could be preempted in other contexts, in future dates, and/or involving other parties.

### *Anti-Incentivization*

In Oklahoma, plan members may choose an in-network retail pharmacy or a mail-order pharmacy, but a PBM may not restrict such choice, and may not "require or incentivize using any discounts in cost-sharing or a reduction in copay or the number of copays to individuals to receive prescription drugs from an individual's choice of in-network pharmacy." 36 Okla. Stat. § 6963(E). Appellees have announced "it is against the law to incentivize patients to fill prescriptions through mail order rather than their pharmacy of choice." The Duncan Banner, *Commissioner Mulready Sets Record Straight about Changes to Prescription Program*, Feb 28, 2023.

Assume that ABC, Inc. sponsors an ERISA-governed self-funded health plan and has decided to fight the rising costs of prescription drugs; to contain the cost of the employer and employee contributions to its plan; and to reduce its members' copays. Its plan might contain the following provision commonly found in ERISA health plan documents:

17

| Covered Prescription Drug Expenses: | Retail Pharmacy | Mail Order | Limits |
|---|---|---|---|
| 90 day supply | | | The member will be responsible for the difference in cost between brand name drug and generic drug if the member chooses to fill a brand drug when a generic is available. |
| Copayment, per prescription or refill, for generic | $30 copay | $20 copay | |
| Copayment, per prescription or refill, for preferred name brands | $210 copay | $140 copay | |
| Copayment, per prescription or refill, for non-preferred name brands | $510 copay | $340 copay | |
| Non-Formulary | NOT COVERED | | |

The plan document itself, as drafted by the "settlor" of the plan (ABC, Inc.), therefore includes incentives for members to utilize the discounts that can be obtained through mail order, especially for expensive drugs for hemophilia, cancer, etc., or for high-volume drugs that are cheaper in 90-day supplies rather than 30-day supplies.

To the extent the anti-incentivization law is construed to require ABC's third-party PBM to ignore ABC's plan document and apply the plan differently, the anti-incentivization law is preempted by ERISA. To the extent the anti-incentivization law is construed to require ABC to rewrite and reissue a new plan document, the anti-incentivization law is certainly preempted by ERISA. Plan fiduciaries cannot be forced to breach the plan's express promise to the members of lower-cost drugs, causing a loss to the plan, and also higher copays for the members, causing a denial

18

of promised benefits.  Similarly, the settlor/plan sponsor cannot be forced to rewrite the plan document to comply with state law, a hallmark of ERISA preemption.  **If that is not true, and if every state in the country were to adopt a different anti-incentivization law, an employer with employees in every state would need 50 different plan documents (or 50 different state-specific sections in its plan document)**.  Oklahoma's anti-incentivization law is preempted because it forces ERISA plans "to adopt [a] particular scheme of substantive coverage." *Rutledge*, 141 S.Ct. at 480.

### *Member ID Cards*

Many insured people carry plastic member ID cards that they present upon arrival at a medical provider's office or facility.  These cards have information about their health plans including things like group numbers, plan numbers, telephone numbers, provider networks, and the plan's TPAs for medical, dental, prescription drug, and other benefits.  Oklahoma commands benefit plans (through its PBMs) to include on the card all of the pharmacies in the network or none at all.  36 Okla. Stat. § 6961(D).  Given that any willing pharmacy must be allowed into the network, 36 Okla. Stat. § 6962(B)(4), the card would have to be the size of a poster board to include everyone or it would have to be silent.  But the PBM Laws go even further and impose the same command regarding non-pharmacy "hospitals and providers

participating in the preferred and nonpreferred pharmacy and <u>health</u> networks." 36 Okla. Stat. § 6961(D) (emphasis added).

*Licensing*

In Oklahoma, "a pharmacy benefits manager or PBM means <u>a person that performs pharmacy benefits management</u> <u>and</u> any other person <u>acting for such person</u> under a contractual or employment relationship in the performance of pharmacy benefits management for a managed-care company, nonprofit hospital, medical service organization, insurance company, third-party payor or a health program administered by a department of this state." 36 Okla. Stat. § 6960(4) (emphasis added); *see also* 59 Okla. Stat. § 356.1(A). "Pharmacy benefits management" is defined very broadly in Title 59 to include common activities such as "negotiating pricing." *See* 59 Okla. Stat. § 357(6). "[T]o provide pharmacy benefits management for any of the services included under the definition of pharmacy benefits management in this state, a pharmacy benefits manager or any entity acting as one in a contractual or employment relationship for a covered entity <u>shall first obtain a license from the Oklahoma Insurance Department</u>, and the Department may charge a fee for such licensure." 59 Okla. Stat. § 358(A) (emphasis added).

Assume that an Oklahoma company, ABC, Inc., sponsors an ERISA-governed self-funded health plan to provide medical, prescription drug, and other

benefits to its employees and their dependents.  The plan is funded through employer and employee contributions.  The ABC Benefits Committee (comprised of officers and employees of ABC) acts as the plan administrator and performs a number of tasks including evaluating and selecting a third-party PBM, negotiating pricing and contract terms with that PBM, and then monitoring the PBM on an ongoing basis. The ABC Benefits Committee also works with the PBM to ultimately decide what pharmacy benefits will be covered, allowed, and paid.  Thus, the ABC Benefits Committee performs "pharmacy benefits management," directly and through the PBM.

To the extent Oklahoma PBM Laws are construed to require ABC, Inc., its self-funded plan, and/or the ABC Benefits Committee to obtain a license, those PBM Laws are preempted by ERISA.  First, ERISA generally preempts these laws as they relate to the ERISA plans.  29 U.S.C. § 1144(a).  Second, the only type of entities Oklahoma can regulate in the ERISA context are insurers, but only those that are truly in the "business of insurance."  29 U.S.C. §1144(b)(2)(A); *Ky. Ass'n of Health Plans v. Miller*; 538 U.S. 329 (2003) (same; establishing the test for entities engaged in the "business of insurance").  However, Oklahoma cannot deem ERISA plans to be in the business of insurance.  29 U.S.C. § 1144(b)(2)(B); *Gobeille*, 577 U.S. at 315-16 (holding that ERISA preempted Vermont's effort to capture self-funded plans by deeming them to be "health insurers")."PBM Laws" simply cannot be used

as a trojan horse to regulate ERISA plans and their fiduciaries directly, which is exactly what has happened – and is happening – in Oklahoma.

### *Investigations/Fines/Penalties*

In the area of disputes, Oklahoma says the Appellees "shall have the power and authority to review complaints, subpoena witnesses and records, initiate prosecution, reprimand, require restitution, approve and sign settlement agreements, place on probation, suspend, revoke and/or levy fines not to exceed [$10,000.00] for each count for which any [PBM] has violated a provision of the [PBM Laws]" and other laws.  36 Okla. Stat. § 6966(C).  The Pharmacy Choice Commission holds hearings and may impose similar penalties.  *Id.*  If the state PBM Laws apply to ABC and the ABC Benefits Committee directly, they could presumably be dragged before the Commissioner or the Commission to account or even be penalized for the way pharmacy benefits have been managed.  These are forms of "State Law" that are preempted.  29 U.S.C. § 1144(a)(a), (c).

Congress established civil and criminal liabilities regarding ERISA-regulated plans, *see* 29 U.S.C. §§ 1131, 1132, and it gave the Secretary of Labor the <u>exclusive</u> authority to investigate and act on violations of law with respect to ERISA-regulated plans.  *See* 29 U.S.C. §§ 1132(a)(2), (4), (5), (6), (8); 1132(b); 1132(c)(2), (4)-(12); 1134; 1136.  If a claim for drug benefits has been denied, or if the plan or its benefits

22

have been mismanaged, the federal statutes and authorities govern to the exclusion of state law.

### Multi-State Plans

Many of *amicis*' members have ERISA plans that cover employees in other states. As noted, ERISA protects ERISA fiduciaries from having "to master the relevant laws of 50 states and to contend with litigation," and from inconsistent state regulation, and from the resulting financial burden which would ultimately borne by the plan members. *Gobeille*, 577 U.S. at 321; *Egelhoff*, 532 U.S. at 149-50; *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

For example, various states impose different enforcement mechanisms and penalties for violations of their PBM laws, most of which are broad enough to apply to ERISA-regulated plans, their sponsors, administrators, fiduciaries, etc. *See, e.g.,* Ark. Code § 17-92-501; Minn. Stat. Ann. §§ 60W.02 (Subd. 15 (defining a PBM to include anyone (*e.g.,* an HR director) who "contracts" with an employer-plan sponsor to provide PBM services), 62W.06 (Subd. 4-6); 59 Okla. Stat. § 358(D); Vt. Stat. Ann. tit. 18, §§ 9471(4), 9474(c)-(e); Mo. Rev. Stat. §§ 376.1350 (18), (22)-(24), 376.396(3), 387(7); Ga. Code Ann. §§ 33-64-1(4), (10), (11), 33-64-9(h); N.D. Cent. Code Ann. § 26.1-36-12.2(5). If Appellees have jurisdiction over a single multi-state plan they could ostensibly penalize its fiduciaries for following mandates

in other states that are prohibited in Oklahoma because the entire plan, (which must be administered consistently under ERISA) is not complying with Oklahoma law.

Another example, on April 3, 2023, Appellees' announced the filing of an administrative action against a large, national PBM for alleged violations of the Patient's Right to Pharmacy Choice Act seeking to censure, suspend, place on probation or revoke its PBM license. The alleged violations appear to relate to self-funded plans and the alleged steerage for prescriptions to mail-order. https://www.oid.ok.gov/release_040323/. As mentioned above, many employers have historically negotiated favorable pricing with their PBM to fill certain drugs through the mail and have included written provisions within their plan document that reflect the related incentives. If a national PBM has its license suspended in Oklahoma, self-funded employers (especially multi-state employers) will have very difficult choices to make about how to redesign their plan. The effect and impact of the laws at issue and their enforcement is a complete destruction of national uniformity. Again, the Oklahoma laws at issue here are far beyond the narrow, behind-the-scenes rate reimbursement methodology that was at issue in *Rutledge*.

## **CONCLUSION**

The District Court's decision should be reversed to the extent it holds that all parts of the PBM Laws are not be preempted by ERISA.

24

Respectfully Submitted,


*s/ Mark D. Spencer*
Mark D. Spencer
Brandon Long
McAfee & Taft A Professional Corporation
Eighth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
mark.spencer@mcafeetaft.com
brandon.long@mcafeetaft.com


**ATTORNEYS FOR THE STATE CHAMBER RESEARCH FOUNDATION LEGAL CENTER, INC., AND THE OKLAHOMA EMPLOYERS HEALTHCARE ALLIANCE, INC.**

## CERTIFICATE OF COMPLIANCE

I hereby certify that that pursuant to Fed. R. App. P. 29(a)(4)(G), 32(g)(1) that this document complies with the type-volume limitation in Fed. R. App. P. 29(a)(5), 32(a)(7)(B)(1), and specifically that it contains 5,566 words.

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of April, 2023, I electronically transmitted the attached Brief of *Amici Curiae* to the Clerk of the Court using the ECF system for filing. Service will be accomplished electronically through the ECF system to all registered participants.

Respectfully Submitted,

*s/ Mark D. Spencer*
Mark D. Spencer
Brandon Long
McAfee & Taft A Professional Corporation
Eighth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone:   (405) 235-9621
Facsimile:    (405) 235-0439
mark.spencer@mcafeetaft.com
brandon.long@mcafeetaft.com

**ATTORNEYS FOR THE STATE CHAMBER RESEARCH FOUNDATION LEGAL CENTER, INC., AND THE OKLAHOMA EMPLOYERS HEALTHCARE ALLIANCE, INC.**